UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GINA LYNN C.,[1]

                        Plaintiff,                    **DECISION AND ORDER**

v.                                                       1:22-cv-787-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2] The parties have consented to my jurisdiction [12]. Having reviewed their submissions [7, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 914-page administrative record [6] is presumed. On October 23, 2019, plaintiff filed an application for disability insurance benefits, alleging poor vision due to cataracts, systemic lupus erythematosus, Raynaud's syndrome, scoliosis, cerebral infarction, hypertension, antiphospholipid antibody with hemorrhagic disorder, and adjustment disorder with mixed anxiety and depressed mood. Administrative Record [6] at 15, 94. Plaintiff's

---

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2] Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

claim was initially denied on June 25, 2020, and upon reconsideration on October 30, 2020. Id. at 15. Plaintiff requested a hearing. Id.

A.      **The Hearing**

On July 22, 2021, Administrative Law Judge ("ALJ") Stephen Cordovani conducted a telephone hearing. [6] at 29-65. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff amended her alleged onset date to April 1, 2020. Id. at 34.

Plaintiff testified that she stopped working on or around April 1, 2020, due to the risk of COVID-19, at the suggestion of her doctor. Id. at 35-36. The organization she was working for shut down two weeks later. Id. at 36. Plaintiff was receiving unemployment benefits. Id. at 35. As required to receive such benefits, she certified each week that she is ready, willing, and able to work. Id. at 37. She testified that she would be willing to work if the job accommodated her disabilities. Id.

However, plaintiff testified that her stress, anxiety, and hypertension worsened since leaving her job. Id. at 38. She had a blood pressure machine at home and took medications, which caused side effects. Id. at 38-39. She saw a family physician regarding her lupus medication. Id. at 39. She was also following up with a hematologist and a neurosurgeon to monitor the risk of blood clots. Id. at 39-40. She would drive to appointments and for grocery shopping. Id. at 41. Her cataracts prevented her from nighttime activities, including driving. Id. at 43. She experienced pain and tingling in her hands and feet. Id. at 46. It was difficult to perform fine motor skills with her hands. Id. at 47. She experienced lupus flare-ups several times a year, resulting in flu-like symptoms and joint pain. Id. at 48-49.

A vocational expert testified that plaintiff's previous work was as a childcare/daycare worker, a hospital housekeeper, and a day habilitation program worker. Id. at

60-61. She testified that limitations in the amount of handling, standing or sitting, additional supervision, or time off task of more than 15% or absenteeism of more than 12 hours per month would be preclusive of this previous work. Id. at 62-64.

**B.    The ALJ's Decision**

On July 30, 2021, ALJ Cordovani issued a Notice of Decision denying plaintiff's claim. Id. at 15-22. He found that plaintiff had the following "medically determinable impairments": cerebral infarction due to thrombosis of the right middle cerebral artery; status post thrombectomy; hypertension; low vision from cataracts; antiphospholipid antibody with hemorrhagic disorder; systemic lupus erythematosus; and hypertension. Id. at 17-18.

However, he found that none of these impairments, either singly or in combination, significantly limited plaintiff's ability to perform basic work-related activities for 12 consecutive months. Id. at 18. Thus, he concluded that plaintiff did not have a "severe" impairment or combination of impairments. Id. Accordingly, he found that plaintiff was not disabled. Id. at 21-22.

**C.    Record Evidence Discussed by ALJ**

In reaching his determination, ALJ Cordovani reviewed plaintiff's testimony and her medical treatment history. Id. at 19-21. Plaintiff reported being diagnosed with lupus over 20 years ago, having been treated with medication, but thereafter being in remission. Id. at 19. Plaintiff was also treated for hypertension. Id. In April 2019, plaintiff was diagnosed with "mild cataracts", but her vision was assessed as correctable to 20/20 on the right eye and 20/25 on the left. Id. at 19, 654, 802.

In April 2017, plaintiff was hospitalized for symptoms of stroke. Id. at 19, 500. Diagnostic imaging showed obstruction of blood flow to the brain. Id. She was treated with aspirin and clopidogrel and discharged. Id. at 498. By August 2017, an angiogram showed "good recanalization". Id. at 20, 622. By September 2017, plaintiff was neurologically recovered and had resumed normal activities. Id. In 2018, she reported performing all activities of daily living without assistance, though she had some "minimal tingling" in her hand. Id. at 20, 845. She was told to follow up with her neurosurgeon on an "as needed" basis and did not. Id. at 20, 846. She also treated with hematologist Adam Kotowski, M.D., who continued her on medication indefinitely, but noted that she had been stable and asymptomatic. Id. at 20, 816-25. Plaintiff returned to work in late 2018 and continued working through 2019. Id. Plaintiff's 2019 and 2020 physical examinations were normal, with full motor power in all extremities, normal coordination, and normal sensation. Id. While she complained of "feelings of anxiety" her records did not indicate any mental health diagnosis or treatment. Id. at 20-21.

ALJ Cordovani considered there to be "no significant opinions in the record", but he found persuasive the state agency review physicians' opinion that plaintiff did not meet the requirements for statutory blindness. Id. at 21. ALJ Cordovani also noted a consultative opinion from 2016, which he rejected on the basis that it related to complaints of back pain and other exertional limitations and was unrelated to plaintiff's current complaints and treatment. Id.

## ANALYSIS

Plaintiff argues that ALJ Cordovani's decision was deficient because: (1) it failed to address state agency medical consultant Dr. Koenig's opinion that her cataracts and loss of central visual acuity were "severe" impairments; and (2) his determination is unsupported by any medical opinion. Plaintiff's Memorandum of Law [6-1] at 1, 9-15.

-4-

A.     **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.     **Dr. Koenig's assessment of "severe" impairment**

Plaintiff argues that ALJ Cordovani failed to address state agency review physician Dr. Koenig's assessment that plaintiff's cataract and loss of central visual acuity were "severe" impairments. [7-1] at 9 (*citing* [6] at 107). While Dr. Koenig's evaluation does list those impairments and categorize them as "severe", he also states that "[plaintiff] is being reviewed for stat[utory] blindness only". Id. at 107. To that end, Dr. Koenig found that the medical records indicated that plaintiff's vision was "grossly normal", and that the evidence did not support a

determination of statutory blindness. Id. Dr. Koenig made no other findings, and he concluded that plaintiff was "not disabled". Id. at 108.

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §404.1520(a)(ii). A "severe" impairment (or combination of impairments) is one that "significantly limit[s] your physical or mental ability to do basic work activities". 20 C.F.R. §404.1522(a). Basic work activities include "capacities for seeing, hearing, and speaking". §404.1522(b)(3). In making such determination, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." Cichocki v. Astrue, 729 F.3d 172, 178 n. 3 (2d Cir. 2013).

Here, it is clear that Dr. Koenig's evaluation was offered - and considered by ALJ Cordovani - only for the purposes of determining whether plaintiff met the requirements for statutory blindness. See [6] at 21, 107-08. That determination, which is unchallenged by plaintiff, enjoys substantial support in the record, which indicates that plaintiff's eye conditions were "mild", required nothing but very conservative treatment and monitoring, and did not prevent her from performing activities of daily living such as driving. See id. at 41, 654, 658. To the extent that ALJ Cordovani failed to explicitly discuss the supportability and consistency of that opinion, I find that his thorough discussion of the treatment records suffices to support his decision to credit it. See Sarah M. v. Commissioner of Social Security, 2022 WL 4232880, *5 (W.D.N.Y. 2022) ("the abundance of citations to specific treatment records throughout the ALJ's full decision suggests a thorough examination of the evidence").

In any event, Dr. Koenig's opinion does not identify or discuss any limitations, significant or otherwise, on plaintiff's ability to perform basic work activities. Thus, there is

nothing for the ALJ to further consider on remand. *See* Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) ("we find no reasonable likelihood that her consideration of the same doctor's 2002 report would have changed the ALJ's determination that Petitioner was not disabled during the closed period. Accordingly, remand for consideration of the improperly excluded report is unnecessary").

C.  **Support of a medical opinion**

Plaintiff further argues that ALJ Cordovani erred in rendering a decision without a relevant medical opinion evaluating plaintiff's impairments. [7-1] at 11-15. ALJ Cordovani found the state agency medical consultants' opinions regarding plaintiff's vision to be "persuasive", and an opinion from 2016 to be "not persuasive" because it was issued well prior to the onset date and was not consistent with plaintiff's current treatment or complaints. [6] at 21.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [the ALJ's] determination is supported by substantial evidence". Cichocki, 729 F.3d at 177. The determination of whether evidence is substantial is made on a "case-by-case" basis. Biestek, 587 U.S. at 98. As discussed above, the ALJ determines at step two whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §404.1520(a)(ii). A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities". §404.1520(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs", including (among other things) physical abilities for movement and manipulation; capacity for seeing, hearing, and speaking; and mental abilities such as the ability to understand, carry out, and remember simple instructions. §404.1522(b).

Plaintiff is correct that the record lacks a medical opinion, as that term is defined by Social Security Administration regulations. *See* §404.1513(a)(2) ("[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a claim for benefits." Lowry v. Astrue, 474 Fed. App'x 801, 804 (2d Cir. 2012) (Summary Order). Plaintiff does not contend that there are any outstanding medical records.

Plaintiff cites various cases suggesting that an ALJ errs by formulating a residual functional capacity ("RFC") determination without a supporting medical opinion. [7-1] at 12-14. However, the Second Circuit has repeatedly held that "a medical source statement or formal medical opinion is not necessarily required", at least where "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC]". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary Order). In any event, ALJ Cordovani's decision never proceeded beyond step two. *See* Jason T. v. Commissioner of Social Security, 2025 WL 665154, *4 (W.D.N.Y. 2025) ("those decisions are in the context of a residual functional capacity determination (*i.e.*, step four). . . . the rule would make little sense if a medical opinion were, in fact, required at an earlier step in the process (*e.g.*, step two)").

Here, the medical evidence of record uniformly refutes the assertion that plaintiff's impairments caused anything more than minimal limitations on her ability to perform basic work activities. Plaintiff reported her lupus being in remission and did not seek any treatment in the past 20 years. Id. at 820. While she experienced symptoms of stroke in 2017, she

had returned to work by the following year, and her subsequent physical examinations were normal, indicating full motor power in all extremities, normal coordination, and normal sensation. Id. at 19. While she complained of "feelings of anxiety" her records did not indicate any mental health diagnosis or treatment. Id. at 20-21. Plaintiff bears the burden to demonstrate a severe impairment. *See* Talavera v. Astrue, 697 F.3d 145, 151; *see also* Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987) ([i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so"). Here, she has not.

While plaintiff testified to having greater limitations, ALJ Cordovani discounted that testimony. [6] at 19. Such first-person credibility determinations are entitled to "great deference". *See*, *e.g.*, Christina J. v. Commissioner of Social Security, 695 F. Supp. 3d 357, 362 (W.D.N.Y. 2023). I note, as ALJ Cordovani did, that plaintiff testified to receiving unemployment benefits during the period of alleged disability. [6] at 19, 37. As part of receiving such benefits, she certified each week that she was ready, willing, and able to work. Id. at 37. While such a representation is not dispositive on the issue of disability under Title 42 due to differences in program requirements, "[plaintiff's] request and acceptance of unemployment benefits fundamentally conflicts with his contention that [s]he suffers from a disability and an inability to work". Rosenthal v. Colvin, 2014 WL 1219072, *3 (W.D.N.Y. 2014); *see* Rodriguez v. Commissioner of Social Security, 2020 WL 1316435, *5 (W.D.N.Y. 2020) ("[p]laintiff's receipt of unemployment insurance benefits . . . during a portion of the relevant period[] was also evidence that [his] pain and symptoms were not as severe as he alleged").

As ALJ Cordovani further notes, plaintiff testified that she left her job in April 2020 due to concerns about COVID-19 exposure, not as the result of any functional limitation resulting from her alleged impairments. [6] at 35-36. For all these reasons, ALJ Cordovani's

determination that plaintiff was not under a severe impairment or combination of impairments is supported by substantial evidence. Therefore, her appeal is denied.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

**SO ORDERED**.

Dated: September 23, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge